Theodis BOYKINS, Plaintiff,

v.

LUCENT TECHNOLOGIES, INC., Defendant.

No. Civ.A. 99–2458.

United States District Court, E.D. Pennsylvania.

Jan. 10, 2000.

Niza M. Motola, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for Theodis A. Boykins, plaintiff.

Theodis A. Boykins, Reading, PA, plaintiff pro se.

David S. Fryman, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Niza M. Motola, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for Lucent Technologies Inc., defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Pro se plaintiff, Theodis Boykins, brought this employment discrimination action against the defendant, Lucent Technologies, Inc., pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat.Ann. §§ 951 *et seq.*, and 42 U.S.C. § 1981. Specifically, plaintiff claims that defendant discriminated against him on the basis of his race by suspending him for two days without pay in connection with his involvement in an altercation with a fellow employee. *See* Compl. ¶ 10. In addition, plaintiff maintains that defendant retaliated against him for filing a charge with the Pennsylvania Human Relations Commission ("PHRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 10.

Presently before the court are the cross-motions for summary judgment filed by both parties.[1] The court will grant defendant's motion because plaintiff has failed to produce sufficient evidence to rebut de-

---

1. Plaintiff titled his response as a "Motion for Summary Judgement [sic] Objection by Plaintiff Theodis A. Boykins" with a "Brief Memorandum in Support of Objection of Summary Judgement [sic] by Plaintiff Theodis Boykins." *See* doc. # 6. In support of that motion, but without any citations to them in his objection/motion, plaintiff has also submitted the complete transcript of his deposition testimony and an appendix of documents, which includes his own notarized chronological statement of events during his employment, unsworn "statements" from various individuals, various documents filed or received from either the PHRC or the EEOC, portions of his collective bargaining agreement, the definition of self defense from an unidentified treatise, work injury documentation, unexplained and unidentified work reports, and a medical records release authorization. *See* Pl.'s App.

fendant's proffered reason for his suspension and because plaintiff has not established a prima facie case of retaliation. In turn, the court will deny plaintiff's motion because plaintiff has not shown that he is entitled to judgment as a matter of law.

## I. FACTS

The following material facts are not in dispute or have been construed in the light most favorable to the non-moving party, and all reasonable inferences have drawn in the non-moving party's favor. Plaintiff currently works for defendant as an operator in its Linear I department and has been employed by defendant, or its predecessor, at its Reading facility since 1979. At all relevant times, there was in place a collective bargaining agreement between defendant and the International Brotherhood of Electrical Workers, Local 1898 (the "Union"). Plaintiff is a member of this bargaining unit. Therefore, plaintiff's terms and conditions of employment are governed by the collective bargaining agreement.

In 1997, defendant instituted a cross-training program to increase the production efficiency of its workers. Plaintiff apparently became concerned about the program and its effect on the availability of overtime work. On several occasions, plaintiff questioned another employee, Lee Fry, about Mr. Fry's performance of a particular job function. Shortly thereafter, plaintiff's supervisor, Marty Mislevy, spoke to plaintiff about Mr. Fry's work assignments.

On February 6, 1997, plaintiff and Mr. Fry became involved in a heated conversation regarding a job that Mr. Fry was performing. During the altercation, plaintiff pushed Mr. Fry.[2] At no time, however, did Mr. Fry actually hit or touch plaintiff. Thereafter, defendant conducted an internal investigation of the incident. After a hearing held on March 14, 1997,[3] defendant concluded that plaintiff had violated a workplace conduct rule[4] by pushing Mr. Fry during their argument. Defendant subsequently disciplined plaintiff by suspending him for two days without pay, which took place on March 19 and 20,

**2.** At his grievance hearing and in his deposition, plaintiff claims that he did not "push" Mr. Fry but rather simply "moved [him] away" to get some distance between them. *See* Pl.'s Dep. at 32. Plaintiff also claims that Mr. Fry had "lunged" or "came" at him prior to the push. *See* Pl.'s Compl. ¶ 4; Pl.'s Dep. at 31. During his deposition, however, plaintiff admitted that soon after the incident, he provided defendant with his own handwritten statement in which he acknowledged that he had "pushed" Mr. Fry. *See* Pl.'s Dep. at 36. When questioned about that statement during his deposition, plaintiff admitted that his use of the word "pushed" was accurate. *Id.* Plaintiff further testified that he was later told by his union representatives that he should not have used the word "pushed." *Id.*

**3.** Plaintiff does not dispute that the altercation was investigated or that the parties were interviewed prior to the hearing, although plaintiff argues that Mr. Fry was questioned for two days while he was only questioned one day. Without pointing to any substantive evidence, plaintiff further asserts that the company official who spoke with him was "bias[ed]" and "edit[ed]" what plaintiff said about the incident. *See* Pl.'s Compl. ¶ 5.

Plaintiff, however, corrected any problem or misinterpretation by submitting his own handwritten version of events and admitted that his problem was that the official's version did not include the date of February 4 and that it characterized Mr. Fry as "getting upset" as opposed to "exploding," which is the word plaintiff would have preferred. *See* Pl.'s Dep. at 35, 39–41.

The hearing was attended by plaintiff, Paul Shingleton—Manufacturing Manager, Marty Mislevy—Manufacturing Supervisor, Bob Behm—Manufacturing Supervisor, Rose Symington—H.R. Representative, and Ollie Burgess and Bill Parks—Union Representatives. *Id.* at 46; *see* Def.'s Mot. for Summ.J., Ex. D (Written Warning and Two Day Discipline).

**4.** Defendant's code of conduct provision reads in pertinent part: "To help ensure a safe and healthy work environment, [defendant] prohibits certain activities [which] include: Threatening or violent behavior, or even the suggestion of such behavior, toward others, including co-workers, customers and suppliers." Def.'s Mot. for Summ.J., Ex. E ("Lucent Technologies, Business Guideposts: A Personal Commitment").

1997.[5] Mr. Fry was not disciplined for his part in the altercation.

Plaintiff grieved his suspension through the grievance procedure provided for in the collective bargaining agreement. After defendant denied plaintiff's grievance, the matter proceeded to arbitration. At the arbitration, plaintiff was represented by a union official. Following the hearing, a neutral arbitrator concluded that plaintiff had pushed Mr. Fry in violation of defendant's workplace conduct rules and that, accordingly, defendant had "just cause" to suspend plaintiff for two days without pay. *See* Def.'s Mot. for Summ.J., Ex. I (Summary of Award of Arbitrator) at 1. The arbitrator also stated that "Mr. Fry's [sic] not also having been disciplined does not support a finding of disparate treatment, inasmuch as he was not responsible for initiating any physical contact." *Id.* at 2.[6]

On January 19, 1998, plaintiff filed a charge of discrimination against defendant with the PHRC based on the two-day suspension. His charge was shortly thereafter cross-filed with the EEOC.[7] On February 18, 1999, plaintiff filed an amended complaint with the PHRC alleging that he was a victim of retaliation due to his previously-filed charge.

Based on his complaint in the instant action, his deposition taken in this case, and the discrimination and retaliation charges he filed, plaintiff's theory of the case appears to be that defendant sus-pended him after the altercation with Mr. Fry solely because of his race (African-American) and that after he filed his charge of discrimination with the PHRC, defendant retaliated against him for doing so.

Defendant responds by stating that plaintiff's action in pushing Mr. Fry constituted workplace violence and thus a two-day suspension was warranted. Turning to plaintiff's claims of retaliation, defendant contends that plaintiff has not established a prima facie case of retaliation because he did not suffer any adverse employment action, and even if he had, plaintiff has not demonstrated a causal connection between such actions and plaintiff's filing of a charge.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N.*

---

**5.** Defendant apparently considered in its decision to suspend plaintiff its belief that plaintiff had previously broken a door window at work two years earlier, for which he had been counseled. *See* Pl.'s Dep. at 11. Although plaintiff denied that he had broken anything, plaintiff admitted, however, that he had "slammed and hit [his] hand against the door" because when he had opened one of the ovens on the floor, fumes had risen into his face. *See* Pl.'s Dep. at 12.

**6.** Citing *McDonald v. West Branch,* 466 U.S. 284, 292 n. 13, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), defendant argues that this court should give "great weight" to the arbitrator's factual determinations. The Supreme Court's statement, however, read in context, reveals that for the court to do so, it must be satisfied that the arbitral proceedings were procedurally fair, that an adequate record exists, and that the provisions of the collective bargaining agreement governing the arbitration substantially conformed with Title VII. *Id.* Because defendant has made no such showing, this court cannot afford the arbitrator's decision "great weight."

**7.** Although this charge is labeled "Amended Complaint," the court has not been provided with a copy of any original complaint filed with the PHRC. *See* Def.'s Mot. for Summ.J., Ex. J (Amended Complaint dated Jan. 19, 1998).

*Amer., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot simply rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir. 1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact. *See Sterling Nat'l Mort. Co. v. Mortgage Corner, Inc.,* 97 F.3d 39, 45 (3d Cir. 1996) (finding that plaintiff was obligated to come forward with evidence sufficient to raise triable issue and that "mere speculation about the possibility of the existence of such facts" does not entitle non-moving party to go to trial); *Trap Rock Industries, Inc. v. Local 825 Int'l Union of Operating Engineers, AFL—CIO,* 982 F.2d 884, 890 (3d Cir.1992) (stating that "non-moving party may not rest upon mere allegations, general denials, or . . . vague statements"). Indeed, to defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995).

Moreover, merely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact. *See Kershaw v. Aspin,* No. CIV.A. 94–216, 1994 WL 683384, at *2 (E.D.Pa. Dec. 5, 1994) ("While a pro se litigant must be afforded a more liberal interpretation of [his] complaint than a represented plaintiff, this judicial grace does not relieve the pro se plaintiff of the burden of coming forth with some evidence to rebut defense affidavits that refute [his] claims."); *Wade v. Wooten,* No. CIV.A. 90–2373, 1993 WL 298715, at *5–6 (E.D.Pa. July 30, 1993) (recognizing that, although all reasonable latitude must be afforded pro se litigant, just like any other party, pro se party is subject to obligations of Rule 56(e)).

## III. ANALYSIS.

### A. Plaintiff's Race Discrimination Claim Based on His Two–Day Suspension.

Defendant first argues that plaintiff's § 1981 claim is time-barred.[8] The court agrees with defendant to the extent that plaintiff is claiming defendant discriminated against him because of his race by suspending him.[9]

The statute of limitations for claims brought pursuant to § 1981 in Pennsylvania is two years. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (finding that "[t]he Court of Appeals was correct in selecting the Pennsylvania 2–year limitations period governing personal injury actions" as the applicable limitations period

---

**8.** Section 1981 provides in pertinent part that: [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .

42 U.S.C. § 1981.

**9.** Per the court's review of the complaint and the retaliation charge plaintiff filed with the PHRC, plaintiff's properly presented claims of retaliation are based on actions or events occurring after he filed his charge of discrimination, well within § 1981's two-year statute of limitations. Thus, those claims would not be time-barred and are addressed *infra* in conjunction with the court's analysis under Title VII and the PHRA.

for claims brought under § 1981). The limitations period for employment discrimination cases begins when the plaintiff knows or reasonably should have known that a discriminatory act has occurred. *See Clark v. Sears, Roebuck & Co.,* 827 F.Supp. 1216, 1222 (E.D.Pa.1993).

■ Here, plaintiff claims that he was discriminated against when he was suspended on March 19–20, 1997 while Mr. Fry was not. At that time, plaintiff knew or reasonably should have known of the alleged discriminatory conduct.[10] Plaintiff, however, failed to file his complaint in this action until April 15, 1999, *see* Compl., more than two years after his suspension. Accordingly, plaintiff's claim that he was discriminated against because of his race in violation of 42 U.S.C. § 1981 based upon his two-day suspension is time-barred.

The court turns next to plaintiff's claim of discrimination under Title VII and the PHRA.[11] An employment discrimination plaintiff who relies on indirect or circumstantial evidence enjoys the benefits of the *Burdine–McDonnell Douglas* burden shifting mode of analysis. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### 1. *Plaintiff's prima facie case*

■ To establish a prima facie case for race discrimination based on his suspension, plaintiff must prove: (1) that he is a member of a protected class; (2) that he suffered some form of adverse employment action; (3) under circumstances that give rise to an inference of unlawful discrimination such as might occur when a person not of the protected class is not suspended. *See Jones v. School Dist. of Phila.,* 198 F.3d 403, 410 (3d Cir.1999). For purposes of this motion only, defendant does not challenge plaintiff's prima facie case. Thus, the court's analysis turns to whether defendant has met its burden of production by articulating a legitimate, non-discriminatory reason for plaintiff's suspension.

### 2. *Defendant's legitimate non-discriminatory reason*

Once the prima facie case has been established, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its actions. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see also Burdine,* 450 U.S. at 252–55, 101 S.Ct. 1089; *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). The defendant's burden at this stage is relatively light: It is satisfied if the defendant articulates any legitimate reason for the discharge. Although the defendant need not prove that the articulated reason actually motivated the discharge, *see Fuentes,* 32 F.3d at 763, the reason must be "clear and reasonably specific," *see Johnson v. Women's Christian Alliance,* 76 F.Supp.2d 582, 585 (E.D.Pa.

---

10. Plaintiff has not offered any evidence of, and this court will not assume the existence of, circumstances warranting an equitable tolling that would salvage plaintiff's claim of race discrimination pursuant to § 1981. Indeed, in response to defendant's argument, plaintiff simply responds that his § 1981 claim "is not barred by the statute of limitations, it is timely and fashionable." *See* Pl.'s Resp. at 1.

11. Plaintiff's discrimination and retaliation claims are examined under the Title VII framework in light of the fact that the PHRA, Title VII and § 1981 are construed to be consistently interpreted. *See Pamintuan v.*

*Nanticoke Mem'l Hosp.,* 192 F.3d 378, 385 (3d Cir.1999) (stating § 1981 claims are analyzed similarly to Title VII claims); *Gomez v. Allegheny Health Servs., Inc.,* 71 F.3d 1079, 1083–84 (3d Cir.1995) ("The state Act is construed consistently with interpretations of Title VII."); *see also United Brotherhood of Carpenters & Joiners of Am. v. Pennsylvania Human Relations Comm'n,* 693 A.2d 1379, 1383 & n. 8 (Pa.Cmwlth.1997) (noting adoption by Pennsylvania courts of the federal standard for proving discrimination under Title VII as applicable standard to be used in actions brought pursuant to PHRA).

1999) (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. 1089), "to afford the plaintiff-employee a fair opportunity to pierce the proffered reason with facts of record." *Id.*

In the present case, defendant contends that it suspended plaintiff for two days without pay because he pushed a co-worker during a heated discussion in the work area. Pointing to its code of conduct, defendant argues that plaintiff's actions constituted workplace violence and that the maintenance of a safe workplace warranted plaintiff's discipline. *See* Def.'s Mem. of Law in Support of its Mot. for Summ.J. at 8. The court concludes that the defendant has met its burden of production by stating a clear and reasonably specific legitimate, non-discriminatory reason for the adverse employment action. Thus, at this point, the presumption of discrimination drops from the case. *Fuentes,* 32 F.3d at 763.

### 3. *Plaintiff's Evidence of Pretext*

Once the defendant articulates a clear and reasonably specific legitimate, non-discriminatory reason for its actions, to defeat summary judgment, the plaintiff "must point to some evidence, direct or circumstantial, from which a reasonable finder of fact could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 331 (3d Cir.1995) (citing *Fuentes* ).

The plaintiff can satisfy the first alternative prong by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes,* 32 F.3d at 765; *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061 (3d Cir.1996) (en banc). In other words, a plaintiff may meet this standard "by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Jones,* 198 F.3d at 413; *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."). Alternatively, a plaintiff can satisfy the second prong by showing " 'that the employer has previously discriminated against the plaintiff, that the employer had previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class.' " *Jones,* 198 F.3d at 413 (citing *Simpson v. Kay Jewelers,* 142 F.3d 639, 645 (3d Cir. 1998)). At all times, the burden of persuasion remains with the plaintiff. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089.

Although plaintiff states in his memorandum in objection to defendant's motion that he "has a preponderance of evidence against the Defendant to prove his race played a sole role in the decision to suspend him and can demonstrate that Lucent's reason for suspension and other form of discrimination and harassment are [pretextual]," *see* Pl.'s Resp. at 1, plaintiff fails to identify just what that evidence is, how it supports his claims, or how it establishes pretext. Rather, as noted above, plaintiff has simply submitted a response with no citations to any evidence of record, an appendix of various documents allegedly related to this action, and his deposition transcript.

Nonetheless, because plaintiff is proceeding pro se, the court independently reviewed plaintiff's submissions on his behalf. Based on the court's own review, plaintiff appears to be alleging pretext by claiming that Mr. Fry was not disciplined

for his part in the February 6, 1997 incident—a fact which defendant does not dispute—while plaintiff was suspended for two days. Plaintiff concedes, however, that he pushed Mr. Fry and that at no time during the altercation did Mr. Fry push or touch him.

Plaintiff has further attached a memo dated October 16, 1996 from defendant's Human Resources & Facilities Director, IC Division, which states in part: "Behaviour such as using inappropriate language, racial and sexual slurs, writing inappropriate messages, ... and disrespecting people in general is absolutely not acceptable. Any conduct violating these policies will result in disciplinary action up to and including dismissal...." Pl.'s App., Ex. 2. Plaintiff appears to be claiming that defendant's asserted reason of a violation of workplace conduct rules is pretext because despite defendant's alleged policy, Mr. Fry was neither disciplined when he engaged in abusive behavior towards plaintiff during the February 6th incident and nor was he disciplined when he acted similarly towards others on separate occasions.

With respect to Mr. Fry's alleged abuse of other employees, plaintiff's deposition transcript contains his testimony that certain management personnel were aware of an incident where Mr. Fry verbally abused an African American operator, Andrea Maurer, on July 14, 1997, yet Mr. Fry was not suspended.[12] *See* Pl.'s Dep. at 16. Plaintiff also submits a signed, unsworn piece of paper dated August 1, 1999 from a Pat Gallagher and an April Weaver that states:

"We, Pat Gallagher and April Weaver, saw Lee Fry yell at Joyce Kuras on Feb. 4. We know about Marty's harassment of Ted. We feel that we were harassed by Marty, too, about our FMLA status. Andrea Mauer told us how ugly Lee Fry was to her, too. We reported all of this information to Bonnie Kline of Lucent Technologies Equal Opportunity Office. Aryene Ayala was pushed by Lee Fry on another occasion."

Pl.'s App, Ex. 17.[13] In addition, plaintiff submits an unsworn letter dated July 7, 1999 from an individual whose signature is not completely discernable.[14] The author states that "five woman [sic] have approached me about Mr. Fry's verbal abuse. One lady said Mr. Fry pushed her in a verbal exchange. She would not come forward because her husband works there and was affraid [sic] he would get in trouble defending her honor." Pl.'s App., Ex. 17.

Addressing plaintiff's own testimony first, plaintiff has failed to show that defendant's articulated reason for suspending him for two days for pushing Mr. Fry is pretextual. Contrary to plaintiff's beliefs, intentionally making physical contact with or pushing a co-employee is not the same conduct as verbally abusing a co-employee. Therefore, Mr. Fry and plaintiff are not similarly situated. Indeed, "[t]o be deemed similarly situated the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Bullock v. Children's Hosp. of Phila.*, 71 F.Supp.2d 482, 489 (E.D.Pa.1999) (internal quotations omitted). Pushing a co-employee entails an inherent risk that the employee will fall as a result of the push and become serious-

---

**12.** Plaintiff has no first-hand knowledge of this incident and apparently only became aware of it when the alleged abused employee came to plaintiff asking for help. Pl.'s Dep. at 16.

**13.** The court's review of plaintiff's deposition transcript reveals that Pat Gallagher and April Weaver are plaintiff's co-employees.

The court does not know, however, the race of these individuals.

**14.** Per the court's review of plaintiff's deposition transcript, the individual may be Clark Seiler, a co-employee. *See* Pl.'s Dep. at 72–73, 155.

ly injured. Verbal abuse, assuming it did occur, does not carry that risk.[15] Thus, plaintiff's comparison of himself with Mr. Fry is insufficient to show pretext in the instant case. Moreover, absent evidence of discriminatory animus, this court will not second-guess defendant's business decision to impose a two-day suspension on plaintiff for his actions. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir.1997).

Turning next to the statements by the various individuals who claim that Mr. Fry has pushed other employees,[16] "Federal Rule of Civil Procedure 56(e) requires affidavits submitted in opposition to a motion for summary judgment be sworn or certified. Matters which are not sworn or certified should be stricken." *Tukesbrey v. Midwest Transit, Inc.*, 822 F.Supp. 1192 (W.D.Pa.1993); *see also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (stating party seeking judgment contending no dispute of material fact is entitled "to demand at least one sworn averment of that fact before the lengthy process of litigation continues"). Neither of the two statements that refer to Mr. Fry are sworn or made under penalty of perjury. As stated above, simply because a party is proceeding pro se does not relieve him of the strictures of Rule 56(e). *See Fullman v. Philadelphia Int'l Airport*, 49 F.Supp.2d 434, 440 (E.D.Pa.1999); *see also McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (stating that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Thus, the unsworn statements submitted by plaintiff are insufficient to oppose successfully a motion for summary judgment.

■ Even if the court were to look at the substantive evidence in its current form, however, such statements would not be admissible. Neither statement involving Mr. Fry's alleged pushing of other employees appears to be based on personal knowledge. Nor do the statements provide any specific detail surrounding the alleged events. Moreover, the statements contain multiple levels of hearsay, at times from unidentified individuals. Thus, even if the declarants were to appear at trial, their testimony would be inadmissible. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n. 1 (3d Cir.1996) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1234 n. 9 (3d Cir.1993). Because these witnesses' statements proffered by plaintiff would be inadmissible at trial, the statements are insufficient to defeat summary judgment. *Id.* (citing F.R.E. 801(c) & 802; Fed. R.Civ.P. 56(e)).[17]

Finally, plaintiff appeared in his deposition to be claiming that pretext is shown based on his allegations that his supervisor, Mr. Mislevy, mistreated him due to his race. In that regard, plaintiff testified that Mr. Mislevy treats African American employees differently than white employees, that Mr. Mislevy should have sat and talked to both plaintiff and Mr. Fry after the February 6, 1997 incident, and that Mr. Mislevy seemed to favor Mr. Fry and another white employee. *See* Pl.'s Dep. at 17, 51–52. Plaintiff's own testimony, how-

---

**15.** *Cf.* "Sticks and stone may break your bones, but names can never hurt you."

**16.** Most of the statements plaintiff provides do not provide any information relevant to the instant matter or are simply character references. *See* Pl.'s App., Ex. 17. Accordingly, the court will not consider those particular statements for purposes of deciding this motion.

**17.** In any event, these individuals neither allege that management was aware of Mr. Fry's actions nor that, if it were, the company failed to discipline Mr. Fry. *See* Pl.'s App, Ex. 17. Moreover, plaintiff provides no evidence that the decisionmakers who imposed his suspension were involved in the situation involving Mr. Fry and Ms. Ayala. Thus, plaintiff's alleged evidence fails to rebut defendant's legitimate, proffered reason for plaintiff's suspension.

ever, undermines this alleged evidence of pretext.

■ For example, plaintiff admitted that Mr. Mislevy has never said anything to plaintiff about his race, *see id.* at 48, and when asked on what evidence he based his claim of mistreatment, plaintiff conceded that it was simply his perception. *Id.* at 22, 52, 127. Pretext cannot be established based on speculation and mere conclusory allegations. *See Billet v. CIGNA Corp.,* 940 F.2d 812, 816 (3d Cir.1991) ("Merely reciting that [race] was the reason for the decision does not make it so."), *abrogated on other grounds by, St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 517–18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In addition, plaintiff testified that a number of non-African American have complained to defendant's designated EEO employee about problems with Mr. Mislevy. *See* Pl.'s Dep. at 72–73.

Accordingly, plaintiff has failed to offer any evidence that demonstrates that defendant's reason for suspending him—pushing another employee—is weak, implausible, contradictory, or incoherent or that discriminatory animus was more likely than not the motivating or determinative cause of defendant's decision to suspend plaintiff.

### B. *Plaintiff's Retaliation Claim*

Plaintiff alleges that defendant retaliated against him after he filed a charge of discrimination.[18] Although plaintiff's response, attached appendix, and deposition transcript are far from models of clarity, the court concludes, by reviewing those documents as well as plaintiff's charge of retaliation, that plaintiff is alleging that defendant retaliated against him after he filed his initial charge of discrimination on January 19, 1998 by: (1) having a white employee observe him in July of 1998 while he was working; (2) removing him in July of 1998 from his regular job and placing him in a job not in his work classification and then in August 1998, returning him to his original job area but assigning him to a different job within that area; (3) failing him on a certification test in August of 1998 and only passing him after he complained to an African–American senior operator; and (4) denying him overtime work.

Title VII provides in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because

---

**18.** The court notes that plaintiff has changed numerous lines in his deposition transcript, some of which he put in an errata sheet and others which he has not. With this background, the court discerns that plaintiff also appears to be claiming that he was retaliated against prior to filing an administrative charge. Apparently, plaintiff complained to defendant's EEO employee before the hearing that he was being "railroaded on trumped up charges." *See* Pl.'s Compl. ¶ 7; Pl.'s Dep. at 70. During his deposition, plaintiff testified that he told the EEO employee some time in February that the charges made against him were due to his race. *See* Pl.'s Dep. at 70, 73–74. Plaintiff further appears to be claiming that because of such complaint, he was moved to the corner of the job room as soon as he returned from his suspension on March 18 and 19th. *Id.* at 65–66, 68–69, 77. Plaintiff acknowledged, however, that he was returned to his original place within one week, i.e., which would be prior to April of 1997. *Id.* Thus, this claim of retaliation, occurring more than two years prior to plaintiff's filing of the instant action, is time-barred to the extent it is alleged pursuant to § 1981. To the extent this claim of retaliation is being brought pursuant to Title VII and the PHRA, the court notes that plaintiff did not allege this as a retaliatory act in either of the complaints he submitted to the PHRC. Accordingly, plaintiff cannot raise it here. *See Farber v. General Elec. Co.,* No. CIV.A. 93–2349, 1994 WL 46519, at *2 (E.D.Pa. Feb. 16, 1994) (allowing amendment of complaint for retaliatory acts occurring after filing of charge but stating that "[w]here the alleged retaliation occurred prior to the EEOC charge but was omitted from the charge, courts generally have been reluctant to allow the claim to be added in a subsequent civil action") (citing cases).

[the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). As with the claims of discrimination, a plaintiff who relies upon indirect or circumstantial evidence to prove retaliation likewise enjoys the benefit of the *Burdine–McDonnell Douglas* burden shifting mode of analysis.

 To establish a prima facie case of discriminatory retaliation under Title VII, a plaintiff must first demonstrate that: (1) he engaged in activity protected by Title VII;[19] (2) the employer took an adverse employment action against him;[20] and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Robinson v. Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir.1997) *(citing Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995)). Once the plaintiff establishes a prima facie case, the defendant must state a clear and reasonably specific legitimate, non-discriminatory reason for the adverse employment action. *See Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996). If the defendant does so, the plaintiff must then meet his burden of persuasion by proving that the defendant's proffered reasons are not the "true reasons" for its decision, but instead are merely a pretext for discrimination. *Id.*

 Plaintiff's alleged instances of retaliation will be addressed seriatim. First, plaintiff's claim of retaliation in that he was "watched over" by a white employee,

Sue Bell, due to his engaging in protected activity is wholly without merit.[21] Although plaintiff has established the first prong of his prima facie case, simply being observed at work, without more, does not rise to the level of an adverse employment action. *See McCoy v. Macon Water Auth.*, 966 F.Supp. 1209, 1221 (M.D.Ga.1997) ("It is not harassment for supervisors to monitor the performance of their employees...."); *Yerby v. Wal–Mart Stores, Inc.*, No. CIV.A. 96–639–B, 1997 WL 902108, at *10 (E.D.Okla. Aug.29, 1997) (finding supervisor's alleged "watching of [plaintiff] relies on [plaintiff]'s perception instead of any concrete factual basis" and thus does not constitute retaliation), *aff'd*, 145 F.3d 1347, 1998 WL 234537 (10th Cir. 1998). Indeed, "not everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Robinson*, 120 F.3d at 1300 (internal quotations omitted). Moreover, during his deposition, plaintiff admitted that Ms. Bell "watched" both African American and white employees. Pl.'s Dep. at 83–84. Thus, plaintiff has not established that he suffered an adverse employment action and therefore, this claim of retaliation must fail.

Second, plaintiff claims that he was retaliated against in July of 1998 when he was removed from his regular job and placed in a job outside of his work classification and that he was further retaliated against

---

**19.** It is well-established that filing a charge of discrimination based upon race constitutes protected activity. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir.1997).

**20.** The following actions are prohibited:

[T]o fail or to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any indi-

vidual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race....

42 U.S.C. § 2000e–2(a).

**21.** Plaintiff does not inform the court of Ms. Bell's position within the company, but it appears from his deposition testimony and from defendant's memorandum of law that Ms. Bell is also an operator and not a supervisor. *See* Pl.'s Dep. at 25; Def.'s Mem. of Law in Support of its Mot. for Summ.J. at 19, n. 12.

in August of 1998 when he was returned to his original job area but given a different assignment within that area. During his deposition, plaintiff conceded that in connection with these transfers, he suffered no loss in pay, his job shift remained the same, and his hours remained the same. *See id.* at 87, 101–02.

. Defendant responds to this particular claim of retaliation by contending that these transfers were the result of defendant's cross-training program, that a number of employees were also cross-trained, and the transfers were implemented in accordance with the collective bargaining agreement in force at that time. *See* Def.'s Mot. for Summ.J., Ex. C (Aff. of Martin Mislevy) ¶¶ 7–8; Ex. B (Collective Bargaining Agreement) at unnumbered page 4 (Temporary Reassignments). Therefore, according to defendant, plaintiff has not established that he suffered an adverse employment action because the terms and conditions of his employment were not altered.

 Transfers are not automatically immune from classification as an adverse employment action. *See Torre v. Casio, Inc.,* 42 F.3d 825, 831 n. 7 (3d Cir.1994) ("It is clear, however, that a transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action."). This court agrees, nonetheless, that under the circumstances present in this case, plaintiff has not established that he suffered an adverse employment action. Conceding that he suffered no loss in pay or change in shift or hours, plaintiff also fails to point to any evidence in the record that these

transfers denied him of any employment opportunity or altered any employment rights, e.g., that these were permanent reassignments from which his employment opportunities were limited. *Cf. id.* at 833 (finding material issue of fact created where plaintiff introduced evidence that he was transferred to "a dead-end" job that had actually been eliminated before he was transferred to it); *see also Robinson,* 120 F.3d at 1301 (citing *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996), for proposition that "lateral transfer involving small indirect effect on employee's earnings from commissions cannot rise to the level of a material adverse employment action"). Moreover, even if plaintiff had suffered an adverse employment action with respect to these transfers, he has not shown any causal connection, other than his own unsubstantiated beliefs, that these transfers were connected to his filing of a charge several months earlier.[22] Nor can an inference of causation be drawn from the passage of time between the protected activity and the transfer, since the alleged adverse action occurred approximately six months after the filing of the charge. *See Krouse,* 126 F.3d at 503 (noting apparent split in circuit but stating that timing must·be unusually suggestive to establish causation and that under the facts before it, "the timing of the allegedly retaliatory employment action cannot, standing alone, support a finding of causal link").

 Third, plaintiff contends that defendant retaliated against him by intentionally failing him on a certification test.[23]

---

**22.** Although defendant does not challenge plaintiff at the pretext stage, plaintiff cannot demonstrate any inconsistencies, implausibilities, or weaknesses in what would be defendant's legitimate, non-discriminatory reason, the cross-training program and the allowance of temporary assignments pursuant to the collective bargaining agreement, that would render such reason pretextual. Although plaintiff baldly contends at various times that no other employees have been moved, *see* Def.'s Mot. for Summ.J., Ex. L (Pl.'s Amended Compl. to PHRC) ¶ 3.d.(2), he acknowledged

in his deposition that jobs were cross-trained. *See* Pl.'s Dep. at 25. Moreover, his contention is further weakened by his argument that he was treated unfairly, as opposed to other employees, when he was taking his certification test, tests which defendant has attested occur after cross-training is completed. *See* Def.'s Mot. for Summ.J., Ex. C (Aff. of Martin Mislevy) ¶ 9.

**23.** In connection with the cross-training program, once an employee is cross-trained, he or she is tested to ensure knowledge of the job

Specifically, plaintiff complains that he failed the initial test and only after he complained to an African American supervisor was he allowed to retake the test, which he then passed despite having provided identical answers to those he gave on his first test.

Defendant argues that plaintiff has again failed to show that he suffered an adverse employment action with respect to the certification testing. This court agrees. Plaintiff does not allege that any stigma is attached to failing the certification test. Similarly, plaintiff has not claimed that his initial failure resulted in any change in his employment conditions, privileges, or opportunities of employment. Indeed, plaintiff admits that he subsequently passed the certification test the very next day. *See* Pl.'s Dep. at 104. Moreover, other than the mere fact that it occurred several months after he filed a discrimination charge, plaintiff has failed to establish any sort of causal link between his failing the test and his protected activity. Rather, during his deposition, plaintiff claimed that the individual testing him, Phil Leyman, failed him because Mr. Mislevy "told him to fail me." Pl.'s Dep. at 104. When asked what evidence he had to support that claim, plaintiff stated it was "[j]ust a feeling. Because I worked with Phil before, and I knew he wasn't that way." *Id.* Further, plaintiff has advanced no evidence that Mr. Leyman was even aware that plaintiff had made internal complaints or filed a charge alleging racial discrimination. *See Krouse*, 126 F.3d at 505 (finding no causal link with respect to employer's denial of disability pension where, in addition to occurring two years after plaintiff engaged in protected activity, plaintiff had submitted no evidence that members of pension plan committee were aware of plaintiff's protected activity).

■ Finally, plaintiff claims that defendant retaliated against him by denying him overtime pay. Although loss of overtime pay could possibly constitute an adverse employment action, plaintiff's own deposition testimony on this subject refutes any such claim and demonstrates that he has suffered no adverse employment action with respect to overtime. For example, although at several points during his deposition plaintiff testified that he received no overtime, *see* Pl.'s Dep. at 84, 88, 90, when asked how his 1997 overtime hours compared with his 1996 overtime hours, plaintiff conceded that he had logged more overtime hours in 1997 than he had in 1996. *See id.* at 92–93. Moreover, in response to plaintiff's unsubstantiated claim that other employees received more overtime than he did, defendant has submitted company overtime records, which plaintiff does not dispute, that show that plaintiff had the most overtime hours of any employee in his shift and subclassification in 1996, 1997, and 1998. *See* Def.'s Mot. for Summ.J., Ex. P (Overtime Reports for 1996, 1997, and 1998). Defendant further attaches plaintiff's W–2 forms for 1997 and 1998, which show a rise in plaintiff's gross wages from defendant from $62,017.63 to $83,564.54 in those two years. *See* Def.'s Mot. for Summ.J., Ex. Q. Therefore, plaintiff clearly did not suffer an adverse employment action with respect to a denial of overtime.

## IV. CONCLUSION

Plaintiff has not established the essential elements of his discrimination and retaliation claims. In addition, after defendant satisfied its burden of production by articulating a legitimate, non-discriminatory reason for suspending plaintiff, plaintiff failed to satisfy his burden of showing that the defendant's articulated reason was a pretext for discrimination. Finally, plaintiff has failed to establish a prima facie case of retaliation. Accordingly, plaintiff's motion for summary judgment will be de-

functions. *See* Def.'s Mot. for Summ.J., Ex. C (Aff. of M. Mislevy) at ¶ 9. If an employee is unsuccessful when tested, he or she is given additional time to pass the certification test. *Id.*

nied, defendant's motion for summary judgment will be granted, and judgment shall be entered in favor of defendant and against plaintiff on all claims.

## ORDER

**AND NOW,** this **10th** day of **January, 2000,** it is hereby **ORDERED** that:

1. Defendant's motion for summary judgment (doc. # 4) is **GRANTED.**

2. Plaintiff's cross-motion for summary judgment (doc. # 6) is **DENIED.**

3. **JUDGMENT** is **ENTERED** in favor of defendant and against plaintiff.

The clerk shall mark this case **CLOSED.**

**AND IT IS SO ORDERED.**