Thomas ROSS, Plaintiff,

v.

**KRAFT FOODS NORTH AMERICA, INC., et al., Defendant.**

No. Civ.A. 02–CV–7558.

United States District Court, E.D. Pennsylvania.

Nov. 24, 2004.

Timothy M. Kolman, Langhorne, PA, for plaintiff.

Marguerite S. Walsh, Michelle Halgas Malloy, Littler Mendelson Prof. Corp., Philadelphia, PA, for defendant.

### EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

### I. Introduction

Pro se[1] plaintiff Thomas Ross brings this action against Kraft · Foods North America, Inc. ("Kraft") alleging violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. ("ADA"), and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 959 et seq. ("PHRA"). Defendants have moved for summary judgment on all of Ross' claims. For the reasons that follow, I will grant the motion.

### II. Statement of Facts[2]

Ross was employed by Kraft from July 5, 1998 until his termination on August 6,

---

1. Counsel was appointed to represent Ross in March 2003. In July 2003, Ross notified me that he no longer wished to be represented by his court-appointed attorney.

2. The facts are stated in the light most favor-

2001. (Def.'s Mem. Supp. Summ. J. Ex. A at 16.) At the time of his termination, Ross held the position of full-time line technician. (*Id.* at 16.) His responsibilities included: starting and stopping production machines, reporting malfunctions of the machines, making minor adjustments to the machines, inspecting the machines, and clearing product jams on the machines. (*Id.* at 16–18; Def.'s Mem. Supp. Summ. J. Ex. B.)

Ross has suffered from chronic bronchitis since 1988. (Def. Mem. Supp. Summ. J. Ex. A. at 142.) Plaintiff also has suffered from anxiety, depression, obesity, hypertension, sleep apnea, and carpal tunnel syndrome, although it is not clear when these ailments began. (*Id.* at 99–100; Pl.'s Pretrial Mem. at Ex. 34.) Plaintiff states that he did not become disabled until after his employment with Kraft terminated. (Def. Mem. Supp. Summ. J. Ex. A at 99–100.)

During the relevant time period, the attendance of Kraft employees was governed by a No–Fault attendance policy. (Def.'s Mem. Supp. Summ. J. Ex. A at 25.) The policy provided for the assignment of different levels of points for absences, tardiness, and early departures, and set forth progressive disciplinary steps for repeat violations of the policy. (*Id.* at 26–27; Def.'s Mem. Supp. Summ. J. Ex. C.)

Between September 1999 and March 15, 2000, Ross failed to report to work without notice on six occasions, was absent due to sickness on two occasions, reported to work late on three occasions, and arrived to work late and left early on two occasions. (Def.'s Mem. Supp. Summ. J. Ex. B.) He therefore accumulated seventeen and one-half points under the attendance policy, well over the minimum six points required to trigger disciplinary action. He received a written warning on March 15, 2000. Following two additional sick days, a late arrival and early departure he was suspended for one-week beginning May 1, 2000. (*Id.*)

Between May 10, 2000 and September 7, 2000, Ross was absent from work twice, late three times and left early twice, thereby accumulating four and one-half additional points under the attendance policy and progressing to the third step of the Attendance Policy, a two-week suspension. (*Id.*) During that time period, Ross was provided with sixteen days of FMLA leave and excused absences. His two-week suspension ran from September 11, 2000 through September 25, 2000. (*Id.*)

Following his second suspension, Ross continued to accumulate points under the attendance policy. The policy provides that an individual who accumulates one point in the 90 days following a two-week suspension is subject to termination. (*Id.*) Despite Ross' accumulation of seven and one-half points due to absences, tardiness, and early departure in October and November 2000, Kraft placed Ross in a special attendance program and added an additional step to the disciplinary progression, Final Warning. (*Id.*) In January 2001, Ross was informed that further absences would result in termination. (Def.'s Mem. Supp. Summ. J. Ex. A.)

In January and February of 2001, Ross was absent due to sickness twice, arrived late to work three times, and failed to

---

able to plaintiff, the non-moving party. Plaintiff has not submitted formal briefs in opposition to defendant's motion for summary judgment. Rather, he submitted two letters that I directed the clerk's office to docket as a response and sur-reply to the motion. I have reviewed these and all other materials submitted by the plaintiff, but, because of their inscrutable nature, I am left with little choice other than to rely heavily on defendant's characterization of the factual background.

report on one other occasion. (Def.'s Mem. Supp. Summ. J. Ex. B.) At a meeting on February 19, 2001, Ross offered to resign, stating that he could not guarantee reliable attendance going forward. (*Id.*) He was suspended pending termination. (*Id.*) Rather than terminating Ross, however, Kraft placed him on a medical leave of absence. (*Id.*)

Ross returned to work on May 14, 2001, following clearance from his physician. (*Id.*) Between May 30, 2001 and June 28, 2001, Ross failed to report twice, was absent due to sickness three times, and arrived late three times. (*Id.*) He was suspended pending termination on July 9, 2001 and terminated on August 6, 2001. (*Id.*)

### III. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir.1997). "When a motion for summary judgment is made and supported as provided in [Fed.R.Civ.P. 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Fed.R.Civ.P. 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### IV. Discussion

#### A. FMLA Claim

 Ross claims that he was terminated in retaliation for exercising his FMLA rights. I will grant summary judgment on this claim because Ross cannot establish a *prima facie* case of retaliation. To defeat a motion for summary judgment, a plaintiff claiming FMLA retaliation must establish: 1) that he or she was protected under the Act; 2) that he or she suffered an adverse employment action, and 3) that a causal connection exists between the adverse decision and plaintiff's exercise of his or her rights. *Peter v. Lincoln Technical Institute,* 255 F.Supp.2d 417, 445 (E.D.Pa. 2002). Employees are only eligible for FMLA protection if they have been employed with their employer for at least 1,250 hours of service within the twelve months prior to their requested leave. 29 U.S.C. § 2611(2)(A)(ii).

There is no genuine issue of material fact as to whether Ross was protected under the Act. Ross admits that he did not work sufficient hours in the twelve months prior to his request. (Def.'s Mem. Supp. Summ. J. Ex. A at 95 ("I agree that I did not work enough hours.").) Therefore, Ross cannot make out a *prima facie* case of FMLA retaliation and this claim must be dismissed.

#### B. Disability Discrimination Claims

 Ross claims that Kraft failed to make reasonable accommodations of his disabilities and that Kraft terminated Ross due to his actual or perceived disabilities. The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Ross has failed to set forth specific facts showing that there is a genuine issue for trial as to whether he is a "qualified individual with a disability," therefore summary judgment is appropriate.[3] Even were Ross able to make out

---

3. Pennsylvania courts generally interpret the

PHRA in accord with its federal counterparts,

a prima facie case of disability discrimination, he has not met his burden to produce evidence refuting Kraft's legitimate explanation for his termination, excessive absenteeism.

A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To be disabled under the ADA, Ross must either: 1) have a physical or mental impairment that substantially limits one or more of his major life activities; 2) have a record of such an impairment; or 3) be regarded as having such an impairment. 42 U.S.C. § 12102(2). "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). "Major life activities . . . [are] those activities that are of central importance to daily life." *Id.* at 197, 122 S.Ct. 681. "To qualify as disabled, a claimant must further show that the limitation on the major life activity is 'substantial.'" *Id.* at 195, 122 S.Ct. 681. "It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Id.* at 198, 122 S.Ct. 681 (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)).

 Ross has not produced any medical evidence of his disability, nor has Ross set forth specific facts in the record showing a genuine issue for trial as to whether he had a physical or mental impairment at the time of his employment that substantially limited one or more of his major life activities. Ross has perhaps produced some evidence, such as deposition testimony showing that he has difficulty walking, lifting, stooping, crouching, climbing a ladder, tying his shoes, and putting on his socks, indicating that he currently suffers from an impairment limiting one or more of his major life activities; however, there is no evidence that at the time of his employment, Ross was limited in those activities. Ross himself admits that he was not disabled at the time he was terminated from his employment and that he was capable of performing the duties of a line technician. (Def.'s Mem. Supp. Summ. J. Ex. A at 99–100.) Ross has likewise not produced evidence of a record of such an impairment.

 Ross' only evidence that he was "regarded as" disabled is that Kraft's Employee Relations Manager said to Ross, "with your kind of disability you should not be working here." (Complaint at ¶ 21.) An employee is "regarded as" disabled under the ADA when an employer "misinterpret[s] information about an employee's limitations to conclude that the employee is incapable of performing a wide range of jobs." *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 381 (3d Cir.2002) (quoting *Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 187 (3d Cir.1999)). "To be covered under the 'regarded as' prong of the ADA the employer must 'regard[ ] the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled.'" *Id.* At most, the evi-

thus the analysis of Ross' claim under the ADA applies to his claim under the PHRA.

*Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996).

dence Ross has presented is evidence that the manager regarded Ross as "somehow disabled," not that the manager believed Ross to be suffering from an impairment within the meaning of the statute. There is no evidence that Kraft believed that Ross' personal and health difficulties were substantially impairing a major life activity.

██ ·Even assuming that Ross were disabled under the ADA, summary judgment would still be appropriate because Ross has not produced evidence showing that he could perform the essential functions of his job, with or without reasonable accommodation. Ross does not appear to dispute that physical attendance is an essential function of the position of line technician. *See, e.g., Amadio v. Ford Motor Co.*, 238 F.3d 919 (7th Cir.2001); *Greer v. Emerson Electric Co.*, 185 F.3d 917 (8th Cir.1999). Ross was absent, late or left work early on more than one hundred and forty occasions in the final eighteen months of his employment with Kraft. While there is evidence in the record that some of these instances stemmed from Ross' alleged disability, some are wholly unexplained, and others apparently stemmed from difficulties in Ross' personal life. Kraft was, in fact, surprisingly accommodating with Ross and made exceptions to its usual attendance policy to afford Ross an opportunity to sort out his personal life and improve his attendance record. Ross seems to have found Kraft's attendance requirements and related procedures "stressful," but required attendance is a fact of life with which nearly all employees must come to terms. No further accommodation was required of Kraft.

██ Finally, even were Ross able to make out a prima facie case of disability discrimination by showing that he was disabled under the ADA and able to perform the essential functions of his job, summary judgment would still be appropriate because Ross failed to set forth specific facts showing that there is a genuine issue for trial as to whether Kraft's proffered legitimate reason for his termination-excessive absenteeism—is pretextual. *Shaner v. Synthes*, 204 F.3d 494 (3d Cir.2000). Ross, in fact, admits that Kraft terminated him because of his excessive absences, not because of his disability. (Def.'s Mem. Supp. Summ. J. Ex. A at 18.) Therefore, Ross' claims of disability discrimination also fail and summary judgment is appropriate.

## V. Conclusion

It is clear that Ross has been through a difficult chapter in his life-a chapter that involved deaths in his family, physical and mental health problems, and emotional challenges. However, he has not produced and identified evidence sufficient to support valid federal or state law claims against Kraft. For that reason, and for the reasons discussed in greater detail above, I grant defendant's motion for summary judgment.

## ORDER

**AND NOW**, this ____ day of November 2004, upon consideration of defendant Kraft Food North America, Inc.'s motion for summary judgment (docket # 20) and plaintiff's responses, it is hereby **ORDERED** that the said motion is **GRANTED**.